Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,110-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                            Plaintiff-Appellee

versus

JOE BUTLER, JR.                               Defendant-Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 386,600

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for
By: Peggy J. Sullivan                    Defendant-Appellant


JOE BUTLER, JR.                          Pro Se


JAMES EDWARD STEWART, SR.                Counsel for
District Attorney                        Plaintiff-Appellee


REBECCA ARMAND EDWARDS
RON CHRISTOPHER STAMPS
BRITNEY A. GREEN
CHRISTOPHER BOWMAN
Assistant District Attorneys

* * * * *

Before ROBINSON, HUNTER, and MARCOTTE, JJ.

**HUNTER, J.**

Defendant, Joe Butler, Jr. was charged by bill of information with one count of domestic abuse battery with serious bodily injury, in violation of La. R.S. 14:35.3(N), and three counts of domestic abuse battery, child endangerment, in violation of La. R.S. 14:35.3(I). He pled guilty as charged. Subsequently, defendant was adjudicated a second-felony offender, and he was sentenced to serve 10 years at hard labor without the benefit of probation or suspension of sentence for domestic abuse battery with serious bodily injury. With regard to domestic abuse battery/child endangerment, he was sentenced to serve four years for each count, to be served concurrently with each other, but consecutively with the 10-year sentence imposed for domestic abuse battery with serious bodily injury. For the following reasons, we affirm defendant's convictions and sentences, and the case is remanded to the trial court with instructions to correct the minutes regarding defendant's sentences.

## FACTS

On August 24, 2021, defendant, Joe Butler, Jr., and his wife, S.N., had an argument over his use of synthetic marijuana in their home. During the argument, defendant grabbed S.N. by her neck, pinned her against the wall, pulled her to the ground by her hair, wrapped his arm around her neck, and applied pressure until she lost consciousness. S.N.'s three minor children (ages 11, seven, and four) were inside the residence and heard the incident.

Defendant was charged by bill of information with one count of domestic abuse battery with serious bodily injury, in violation of La. R.S. 14:35.3(N), and three counts of domestic abuse battery child endangerment, in violation of La. R.S. 14:35.3(I). At the time of the offenses, defendant

was on probation for theft of a firearm, and prior to entering his plea, defendant was informed of the State's intention to file a habitual offender bill of information. Defendant pled guilty as charged.[1] Subsequently, defendant admitted he was the person who had committed the prior offense, and he was adjudicated a second-felony offender.

Following a hearing, the trial court sentenced defendant to serve 10 years at hard labor without the benefit of probation or suspension of sentence for domestic abuse battery with serious bodily injury. With regard to domestic abuse battery child endangerment, he was sentenced to serve four years for each count, to be served concurrently with each other, but consecutively with the 10-year sentence imposed for domestic abuse battery with serious bodily injury, for "a total of 14 years at hard labor without benefit of probation or suspension of sentence." The trial court found the egregious nature of defendant's conduct warranted consecutive sentences, a lesser sentence would deprecate the seriousness of the offenses. Defendant's motion to reconsider sentence was denied.

Defendant appeals.

### DISCUSSION

Defendant contends the sentences imposed were constitutionally harsh and excessive. He argues his criminal history primarily consists of prior incidents of battery against his wife, and he took responsibility for his actions and expressed remorse. He also asserts S.N. did not seek medical attention for any injuries. According to defendant, other than his criminal

---

[1] The guilty pleas also included permanent protective orders in favor of S.N., the three minor children, and three other family members.

history, the trial court did not state a basis for its assertion that defendant's potential for rehabilitation would be "low."

Furthermore, defendant maintains the imposition of consecutive sentences was inappropriate because the convictions arose out of the same act or transaction, and the trial court's reasons for imposing consecutive sentences do no justify consecutive sentences. Defendant concedes the children were present in the home and heard the incident; however, he argues the children were not in the same room and did not see what occurred.

The law concerning excessive sentences is well-settled; claims are reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065. A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance. *Id*. The goal of Art. 894.1 is to articulate an adequate factual basis for the sentence, not to achieve rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081. There is no requirement that any specific factor be given any particular weight at sentencing. *State v. Taves*, 03-0518 (La. 12/3/03), 861 So. 2d 144.

A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Efferson*, 52,306 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1153, *writ denied*, 18-2052

3

(La. 4/15/19), 267 So. 3d 1131. To constitute an excessive sentence, a reviewing court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock the sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. *State v. Griffin*, 14-1214 (La. 10/14/15), 180 So. 3d 1262; *State v. Efferson*, *supra*.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116; *State v. Efferson*, *supra*. As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *Id*.; *State v. McKeever*, 55,260 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1156, *writ denied*, 23-01429 (La. 4/16/24), 383 So. 3d 149.

Moreover, when two or more convictions arise from the same act or transaction, or constitute part of a common scheme or plan, the terms of the imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Although La. C. Cr. P. art. 883 favors the imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, the trial court is given the discretion to impose consecutive penalties in cases where the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the

4

community. *State v. Walker*, 00-3200 (La. 10/12/01), 799 So. 2d 461; *State v. Van Nortrick*, 51,604 (La. App. 2 Cir. 1/10/18), 244 So. 3d 810, *writ denied*, 18-0194 (La. 11/14/18), 256 So. 3d 284; *State v. McDuffey*, 42,167 (La. App. 2 Cir. 6/20/07), 960 So. 2d 1175, *writ denied*, 07-1537 (La. 1/11/08), 972 So. 2d 1163.

The factors considered when determining whether to impose concurrent or consecutive sentences include: (1) the defendant's criminal history, (2) the gravity or dangerousness of the offense, (3) the viciousness of the crimes, (4) the harm done to the victims, (5) whether the defendant constitutes an unusual risk of danger to the public, (6) the potential for the defendant's rehabilitation, and (7) whether the defendant has received a benefit of a plea bargain. *State v. Van Nortrick*, *supra*; *State v. McDuffey*, *supra*.

If, during the commission of the offense of domestic abuse battery, the offender inflicts serious bodily injury, the offender shall be imprisoned at hard labor for not more than eight years. La. R.S. 14:35.3(N). Because defendant was adjudicated a second-felony offender, pursuant to La. R.S. 15:529.1(A)(1), his sentencing exposure was not less than one-third the longest term, nor more than twice the longest term (2.667-16 years). When the state proves that a minor child 13 years or younger was present at the residence or any other scene at the time of the commission of the offense, the offender, in addition to any other penalties imposed, shall be imprisoned at hard labor for not more than three years. La. R.S. 14:35.3(I). Due to his status as a second-felony offender, defendant's sentencing exposure for domestic abuse battery/child endangerment was not less than one-third the

longest term, nor more than twice the longest term (one-six years).  La. R.S. 15:529.1(A)(1).

In the instant case, prior to imposing the sentence, the trial court noted the defendant was convicted of domestic abuse battery in 2016, for physically attacking and choking S.N.  When given the opportunity to speak prior to sentencing, defendant stated, "[T]he worst possible thing that could happen is, is that it's been made criminal for me to be a father."  Although defendant asserted he was "very sorry for everything I have done in the past," he also stated, "There's a lot of things made out to be worse than they truly were."

In imposing sentence, the trial court noted it considered defendant's criminal record, including his history of violence towards S.N. and the children.  The court stated:

> [M]r. Butler has a history of violence against [S.N.], including the following[.] He was convicted of simple battery *** in December 2016, wherein he was alleged to have strangled [S.N.] to the point of unconsciousness. That's similar to the allegations today that he pled guilty to, straight up.
>
> Also, he was convicted of a violation of a protective order, March 18, 2017 *** wherein he violated an order *** by going to [S.N.]'s residence and allegedly battering her. Mr. Butler was convicted *** of disturbing the peace in January of 2018, wherein some of the allegations included battering [S.N.]
>
> You have a protective order that was issued October the 15th, 2021, which [S.N.] *** described prior incidents involving her and Mr. Butler. The first one, in December of 2017, Mr. Butler held a gun to [S.N.]'s head while she was holding one of her children. And it's alleged that [he] said *** "Don't worry. The baby will only have your blood and brain matter on him, and I'll clean him up after you're loaded in a body bag."
>
> Another allegation is that protective order, March of 2021, [S.N.] got in a wreck. She stated that Mr. Butler got mad and later that night choked her [to the point of] unconsciousness until she urinated on herself. Those are the allegations that are also consistent with this straight-up guilty plea. And, also, I'll

6

note that in that – in that audio, he refused to deny choking her out after – after she said it multiple times.

*** 

In the phone call, after this instant case, Mr. Butler told [S.N.] that she will, "Be held responsible for your actions." And that if she did not leave him alone, "It's going to get worse every single time." [Mr. Butler also stated], "When you come up off the floor, it won't be because I dropped you. It was going to be because I knocked you down."

Finally, Mr. Butler, in that same phone call – it's in the record, that this Court has listened. He told [S.N.] that he does not feel bad about disciplining her, just like he does not feel any remorse about disciplining the kids.

***

The trial court further reviewed the factors set forth in La. C. Cr. P. art. 894.1, and stated a lesser sentence would deprecate the seriousness of the offenses. The court also found defendant's conduct, pulling S.N. by her hair, wrapping his arm around her neck, causing her to lose consciousness, manifested deliberate cruelty to the victim. The court also reiterated defendant's history of violence towards S.N. Mitigating factors considered by the court were as follows: defendant worked as a welder and financially supported his family, and defendant had a desire to be a good father to his children and to assist in caring for his grandfather.

The record reveals the trial court imposed a 10-year sentence for domestic abuse batter with serious bodily injury, when it could have imposed a sentence of 16 years. Defendant's arguments – S.N.'s injuries did not require medical attention, and the children did not actually see the incident – are indicative of his refusal to hold himself accountable for his conduct. There is no question that defendant strangled S.N. until she lost consciousness, and it was not the first time he did so. The record demonstrates defendant's action resulted from his desire to "discipline" S.N. Further, the children were present in the residence at the time of the incident

7

and heard the interaction. Defendant's conduct and his history of repeated violence against S.N. were considered by the trial court, and his behavior was particularly egregious in that he repeatedly victimized and brutalized his wife, choking her until she lost consciousness. Moreover, defendant's statement regarding "things" being "made out to be worse than they truly were" is indicative of his failure to accept any meaningful responsibility for his actions.

After reviewing this record, we find the sentences imposed were amply supported by the record. The trial court properly considered the aggravating and mitigating factors and outlined which factors it found to have applied. The sentences fall within the sentencing ranges for the crimes of conviction, and we find the trial court did not abuse its discretion in sentencing defendant. Nor do we find the trial court abused its discretion in ordering the sentences imposed for child endangerment to run consecutively to the sentence imposed for domestic abuse battery with serious bodily injury. The trial court thoroughly discussed the applicable sentencing factors, including defendant's past violent acts against his wife and children. As noted by the trial court, consecutive sentences were appropriate as the crimes involved separate victims.

In a *pro se* assignment of error, defendant contends the trial court erred in failing to advise him of his rights at the habitual offender hearing, before he admitted he was the same person convicted of two counts of theft of a firearm in 2019. He argues the trial court's failure to advise him of his rights constitute reversible error.

La. R.S. 15:529.1(D)(1)(a) requires the trial court to advise a defendant of the specific allegations contained in the habitual offender bill of

information, his right to a formal hearing, and his right to require the State to prove his identity as a multiple offender. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. *State v. Simpson*, 55,304 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1056, *writ denied*, 23-01641 (La. 5/29/24), 385 So. 3d 703; *State v. Mason*, 37,486 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1077.

In the instant case, after defense counsel entered a plea of not guilty to the habitual offender bill of information, the trial court began informing defendant of the contents of the bill. When the trial court mentioned defendant's 2019 conviction for theft of a firearm, defendant, unprompted, stated, "Yes, sir. That is my only felony conviction." Defendant's statement was made as the trial court was informing him of nature of the proceedings and was not in response to any inquiry from the court. After defendant's statement, the trial referred him to his attorney, who had an off-the-record discussion with defendant. Thereafter, the trial court read the habitual offender bill of information and specifically advised defendant of his right to remain silent and to assert a plea of not guilty to the multiple offender bill. Defendant stated he understood, waived his rights, and pled guilty to the habitual offender bill. Because defendant's admission to the prior felony was unsolicited and unprovoked, we find no error was made on the part of the trial court. We also note defendant was fully aware of the conviction being used against him because prior to accepting the guilty plea, the trial court informed defendant of the State's intent to file a multiple offender bill of information based on the 2019 conviction. This assignment is without merit.

9

In accordance with La. C. Cr. P. art. 920, we have reviewed this record for errors patent. Our error patent review shows the court minutes incorrectly state, "THE SENTENCE IMPOSED IS AN AGREED SENTENCE." The transcript reveals defendant entered unrestricted pleas of guilty, and "the sentencing is up to the Court." There was no agreement as to sentencing.

When there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynch*, 441 So. 2d 732 (La. 1983). This matter is remanded to the trial court with instructions to amend the minutes to correct the entry which states the sentences imposed were "agreed sentence[s]."

**CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.**