Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,394-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

CARMEN C. BROWN                          Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 14F3271

Honorable Hamilton Stephens Winters, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

ROBERT S. TEW                          Counsel for Appellee
District Attorney

FRED R. McGAHA
Assistant District Attorney

* * * * *

Before WILLIAMS, PITMAN, and THOMPSON, JJ.

**WILLIAMS, C.J.**

The defendant, Carmen C. Brown, was charged by bill of information with armed robbery, in violation of La. R.S. 14:64. Following a jury trial, he was found guilty as charged. The defendant was sentenced to serve 25 years at hard labor without the benefit of parole, probation or suspension of sentence. For the following reasons, we affirm.

## FACTS

On November 2, 2014, Karen Palmertree ("the victim") was in her vehicle at Capital One Bank's drive-through automated teller machine ("ATM") on Thomas Road in West Monroe, Louisiana. The victim, who was alone, was talking to a friend on her cellphone when she began operating the ATM. The victim opened the door to her vehicle to gain better access to the machine; she entered an access card to make a cash withdrawal. She attempted to withdraw $400, but when that attempt failed, she withdrew $200. After placing the money in her purse, the victim reinserted the card into the ATM and withdrew an additional $100. The victim remained on her cellphone throughout both transactions.

After the victim completed the second transaction, an unknown male approached her vehicle. The male, later identified as the defendant, Carmen C. Brown, attempted to open the victim's passenger door, then approached the driver's side. The defendant was wearing dark jeans, a skullcap, and a purple LSU "hoodie." He was also holding a handgun in his right hand. The defendant grabbed the $100 and the cellphone from the victim's hand. At the defendant's demand, the victim reinserted the access card into the ATM to withdraw additional funds. However, she was unable to do so due to insufficient funds. The victim convinced the defendant to return her

cellphone in exchange for the access card. Once the victim received her cellphone, she pushed the defendant away from her vehicle, closed the door and drove away.[1] The victim drove to a nearby McDonald's restaurant and reported the incident to the West Monroe Police Department ("WMPD"), which began investigating the armed robbery.

The WMPD obtained the surveillance footage of the robbery from the bank. However, the officers were unable to identify the suspect depicted in the video and were unable to collect any useful fingerprints from the ATM.

Subsequently, on November 11, 2014, Jeremy Streeter, an investigator with the Morehouse Parish Sheriff's Office, contacted the WMPD with information about the robbery. Streeter reported that the defendant had been arrested in Morehouse Parish for an unrelated matter. While the defendant was in custody, a telephone call was made by an inmate, who identified himself as "Carmen Brown," and used the personal identification number assigned to the defendant to call a person named Lorna Delph. Additionally, Streeter asserted that during the phone call, the inmate stated that he had "hit a lick" in West Monroe and provided details consistent with the armed robbery in the instant case.

The WMPD forwarded to Streeter the still photographs taken from the surveillance video of the robbery in West Monroe. Streeter confirmed that the person depicted in the photographs was the defendant.[2] Coincidentally,

_____

[1] The surveillance video of the robbery was admitted into evidence during the defendant's trial. The video depicted a man approaching the passenger side of the victim's vehicle before moving around to the driver's side. The video also showed that the man was holding a weapon on the side of his body throughout the incident.

[2] The still photographs from the surveillance video were admitted into evidence and displayed for the jury.

the defendant had been arrested in Morehouse Parish wearing the same clothing he was wearing on the surveillance video.[3]

A redacted portion of the recorded jailhouse telephone call was played for the jury.[4] During the call, the defendant stated that he had "hit a lick" by grabbing $100 out of a woman's hand. The defendant also stated as follows: the woman was so engaged in her phone call that she did not hear him pull on the passenger door handle; during the robbery, the woman told him that he could have the money and her debit card; he told the woman to insert the card back into the machine and saw that there was a balance of approximately $200 in the bank account; he attempted to withdraw $400, but there were insufficient funds to withdraw that amount; and he demanded the woman's purse, but she refused to give it to him and drove away.

The defendant testified at his trial. He stated that he did not rob the victim, despite the surveillance video of the crime. According to the defendant, the victim had purchased some "pain pills" from him "on credit," and she owed him $1,200. He also testified that he had arranged to meet the victim at the ATM to collect the money she owed him.

During cross-examination, the defendant admitted that he approached the victim with a gun and grabbed $100 and a cellphone from her hand. Nevertheless, the defendant maintained that he was not "being intimidating," and it was not his intention to rob the victim. He explained that his actions

---

[3] Photographs of the clothing the defendant was wearing during the robbery were admitted into evidence.

[4] Prior to trial, the state and the defendant stipulated to a redacted version of the jailhouse phone call, which only relayed information pertaining to the instant offense.

were the result of him "being angry" because the victim reneged on repeated promises to pay him.

The victim was recalled to testify as a rebuttal witness. She testified that the defendant was being untruthful when he stated that she owed him money and had arranged to meet him at the ATM to repay him. The victim stated that she had never met the defendant, had never purchased drugs from him, and had never been extended any "credit" by him. She testified that she had never seen or talked to the defendant before he approached her with a gun and robbed her at the ATM.

Detective Tommy Jones of the WMPD was also recalled as a rebuttal witness. He testified that his investigation of the armed robbery did not reveal that the defendant had met or communicated with the victim prior to the robbery. He stated that the first time he heard anything about an alleged drug debt was during the defendant's testimony at trial.

After deliberating, the jury found the defendant guilty as charged. The trial court denied the defendant's motion for post-verdict judgment of acquittal. The defendant was sentenced to serve 25 years at hard labor without the benefit of parole, probation or suspension of sentence; the defendant's motion to reconsider sentence was denied.

The defendant appeals his sentence.

**DISCUSSION**

The defendant contends his sentence is "unconstitutionally harsh and excessive" under the facts of this case. He argues as follows: (1) the crime occurred when he was 20 years old; (2) he was 25 years old when he was tried, convicted and sentenced; (3) he has a five-year-old child, for whom he does not provide support because his incarceration provides him with "few

options to do so"; (4) he has worked and completed a number of programs during his incarceration; (5) he is not the worst of offenders; (6) he did not strike the victim, threaten to harm her or point the gun directly at her; (7) he has expressed remorse for his crimes, has had an opportunity to become more responsible, and has exhibited a desire to change his ways; (8) the entire incident "lasted just over two minutes"; (9) the 25-year sentence imposed is five years longer than he had been alive at the time of the incident; and (10) a 25-year prison sentence will not cause him to become a productive member of society.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Payne*, 52,310 (La. App. 2 Cir. 1/16/19), 262 So. 3d 498 citing *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 2016-0959 (La. 5/1/17), 219 So. 3d 332.

The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the

5

offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 2007-0144 (La. 9/28/07), 964 So. 2d 351.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 2001-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 2018-0259 (La. 10/29/18), 254 So. 3d 1208.

The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *State v. Williams*, 2003-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Duncan*, 47,697 (La. App. 2 Cir. 1/16/13), 109 So. 3d 921, *writ denied*, 2013-0324 (La. 9/13/13), 120 So. 3d 280. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996).

The penalty for armed robbery is imprisonment for not less than 10 nor more than 99 years without benefit of parole, probation or suspension of sentence. La. R.S. 14:64(B).

In the instant case, prior to imposing the defendant's sentence, the trial court noted that it had reviewed the presentence investigation report. The court also noted that the defendant was in possession of a firearm during the commission of the instant offense, despite having two prior felony convictions. The trial court outlined the factors to be considered pursuant to La. C. Cr. P. art. 894.1, and found that the following circumstances apply: the defendant committed an unprovoked crime of violence by "attacking a vulnerable older female at an ATM machine"; the defendant took the victim's money and ATM card and attempted to obtain additional money; there was no clear motive for the crime; the defendant accused the victim of being a drug user and attempted to label his crime as a drug transaction; the defendant is a "semi-youthful offender"; the defendant does not have a high school diploma; since his incarceration, the defendant is within five points of obtaining a GED; the defendant has limited work experience; the defendant is the father of a five-year-old child; the defendant did not physically harm the victim; the defendant has a significant prior criminal history and has received "significant leniency" through the district attorney's diversion program; the defendant's criminal conduct is likely to recur;[5] and the defendant had expressed remorse and indicated that he had matured and had "turned his life around" while incarcerated.

---

[5] The defendant's prior arrests/convictions include offenses related to theft and unauthorized use of access/debit/ATM cards.

7

After reviewing this record in its entirety, we find that the sentence imposed is not excessive. The trial court complied with La. C. Cr. P. art. 894.1, and recited the aggravating and mitigating factors it found to be applicable. This defendant has a significant criminal record, including at least two prior felony convictions, for which he has been granted leniency. Additionally, this robbery was committed with the use of a dangerous weapon, and the defendant's actions caused substantial danger to the victim. As noted above, the defendant's sentence exposure for armed robbery was 10-99 years. In light of the dangers the defendant created by his offense and his extensive criminal history, the 25-year sentence imposed is not so grossly disproportionate to the severity of the crime that it shocks the sense of justice, nor does this sentence appear to be the needless infliction of pain and suffering. Thus, we find no abuse of the trial court's discretion. Consequently, the defendant's sentence is not constitutionally excessive.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's conviction and sentence.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED.**